No. 2023-1367

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

**INGENICO INC.,**
*Plaintiff / Counterclaim Defendant-Appellee,*

**INGENICO CORP., INGENICO GROUP S.A.,**
*Counterclaim Defendants-Appellees*
**v.**

**IOENGINE, LLC,**
*Defendant / Counter-Claimant-Appellant.*

Appeal from the United States District Court for the District of Delaware,
No. 1:18-cv-00826-WCB, Judge William C. Bryson

## APPELLANT IOENGINE, LLC'S REPLY BRIEF

Noah M. Leibowitz
Gregory T. Chuebon
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797

Michael H. Joshi
DECHERT LLP
3000 El Camino Real
Five Palo Alto Square, Suite 650
Palo Alto, CA 94306

Derek J. Brader
Michael A. Fisher
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104

*Counsel for Appellant*
*IOENGINE, LLC*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS...........................................................................ii

TABLE OF AUTHORITIES ..................................................................iv

I.  Substantial Evidence Does Not Support The Verdict ...................................1

    A.  The District Court Erred By Resting the Verdict on a New Post-Trial Theory.........................................................................2

    B.  The Firmware Upgrader Was Not "On Sale" ....................................5

        1.  Substantial Evidence Does Not Support a "Pre-Installed" Upgrader........................................................................5

        2.  No Evidence Shows That Any Pre-Installed Upgrader Invalidates ..................................................................7

        3.  The Separately Downloadable Firmware Upgrader Was Not "On Sale" .....................................................................8

    C.  The Firmware Upgrader Was Not "In Public Use" ............................9

        a.  There Is No Substantial Evidence of Public Use ............9

        b.  The District Court and Ingenico Applied Incorrect Public Use Principles.................................................13

    D.  There Is No Evidence of the "Communications Network Node" in the U.S....................................................................18

    E.  The Firmware Upgrader Is Not § 102(a) Art .....................................19

        a.  The Firmware Upgrader Was Not "Known or Used by Others".....................................................................19

        b.  The Firmware Upgrader Postdates the Invention..........20

II.  The District Court erred in Its Jury Instructions.............................................22

    A.  The District Court's Instructions on Invention Date Incorrectly Flipped the Legal Burdens ..............................................................23

    B.  The District Court's "Public Use" Instructions Were Erroneously Prejudicial .......................................................................24

    C.     The "On Sale" Instructions Were Erroneously Prejudicial................27

    D.     The District Court Erred in Failing to Instruct on the
            Presumption of Validity ....................................................................28

III.    Ingenico Should Have Been Estopped .........................................................29

# TABLE OF AUTHORITIES

## Cases

*Allergan, Inc. v. Barr Lab'ys, Inc.*,
 501 F. App'x 965 (Fed. Cir. 2013) ......................................................................3

*Allergan, Inc. v. Barr Lab'ys, Inc.*,
 808 F. Supp. 2d 715 (D. Del. 2011) ...................................................................3

*Am. Seating Co. v. USSC Grp.*,
 514 F.3d 1262 (Fed. Cir. 2008) ................................................................... 14, 15

*ART+Com Innovational Pool GmbH v. Google LLC*,
 712 F. App'x 976 (Fed. Cir. 2017)............................................................... 12, 25

*ART+Com Innovationpool GmbH v. Google Inc.*,
 2016 WL 9954312 (D. Del. Sept. 9, 2016) ........................................................25

*BASF Corp. v. SNF Holding Co.*,
 955 F.3d 958 (Fed. Cir. 2020) ............................................................. 16, 19, 26

*Baxter Int'l, Inc. v. COBE Labs., Inc.*,
 88 F.3d 1054 (Fed. Cir. 1996) ..................................................................... 12, 25

*Bose Corp. v. Consumers Union of U.S., Inc.*,
 466 U.S. 485 (1984) ..........................................................................................21

*Brown v. Barbacid*,
 276 F.3d 1327 (Fed. Cir. 2002) .........................................................................22

*Cap Exp., LLC v. Zinus, Inc.*,
 722 F. App'x 1004 (Fed. Cir. 2018)...................................................................28

*Chiron Corp. v. Genentech, Inc.*,
 363 F.3d 1247 (Fed. Cir. 2004) .........................................................................28

*CliniComp Int'l, Inc. v. Athenahealth, Inc.*,
 No. A-18-CV-00425-LY, 2020 WL 7011768 (W.D. Tex. Oct. 28, 2020) ..........30

*Commil USA, LLC v. Cisco Sys., Inc.*,
 575 U.S. 632 (2015) ..........................................................................................28

*Delano Farms Co. v. California Table Grape Comm'n*,
 778 F.3d 1243 (Fed. Cir. 2015) .........................................................................16

*Dey, L.P. v. Sunovion Pharms., Inc.*,
 715 F.3d 1351 (Fed. Cir. 2013) ................................................... 14, 15, 24, 25

*Dupree v. Younger*,
    598 U.S. 729 (2023) ........................................................................................31

*Egbert v. Lippman*,
    104 U.S. 333 (1881) ................................................................. 14, 17

*Elec. Storage Battery Co. v. Shimadzu*,
    307 U.S. 5 (1939) ..........................................................................................12

*Eolas Techs Inc. v. Microsoft Corp.*,
    399 F.3d 1325 (Fed. Cir. 2005) .............................................................12

*ePlus, Inc. v. Lawson Software, Inc.*,
    700 F.3d 509 (Fed. Cir. 2012) ...............................................................31

*Ex Parte Bokhari*,
    No. 09/902,929, 2010 WL 4740064 (B.P.A.I. Nov. 19, 2020) ...........19

*Finjan, Inc. v. Symantec Corp.*,
    No. 10-cv-593, 2013 WL 5302560 (D. Del. Sept. 19, 2013) ..............19

*i4i Ltd. v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) .................................................................4

*IBM Corp. v. Booking Holdings Inc.*,
    775 F. App'x 674 (Fed. Cir. 2019) ........................................................10

*IBM Corp. v. Priceline Grp. Inc.*,
    271 F. Supp. 3d 667 (D. Del. 2017) ............................................ 10, 11

*In re Smith*,
    714 F.2d 1127 (Fed. Cir. 1983) .............................................................15

*Intel Corp. v. U.S. Intern. Trade Comm'n*,
    946 F.2d 821 (Fed. Cir. 1991) ...................................................... 11, 12

*Invitrogen Corp. v. Biocrest Mfg.*,
    424 F.3d 1374 (Fed. Cir. 2005) .............................................................16

*L-3 Commc'ns Corp. v. Sony Corp.*,
    No. 10-cv-734-RGA, 2014 WL 4674815 (D. Del. Sept. 12, 2014) ......4

*Leader Techs., Inc. v. Facebook, Inc.*,
    678 F.3d 1300 (Fed. Cir. 2012) ...................................................... 8, 21

*Lockwood v. Am. Airlines, Inc.*,
    107 F.3d 1565 (Fed. Cir. 1997) .............................................................25

*Metallizing Eng. Co. v. Kenyon Bearing & Auto Parts Co.*,
    153 F.2d 516 (2d Cir. 1946) ..................................................................26

*Microsoft Corp. v. i4i Ltd. P'ship*,
    564 U.S. 91 (2011) .......................................................................................28

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.*,
    271 F. Supp. 3d 990 (E.D. Wis. 2017) ................................................30

*Minerva Surgical, Inc. v. Hologic, Inc.*,
    59 F.4th 1371 (Fed. Cir. 2023) ................................................... 16, 18

*Minn. Min. & Mfg. Co. v. Chemque, Inc.*,
    303 F.3d 1294 (Fed. Cir. 2003) ................................................... 10, 11

*New Railhead Mfg., L.L.C. v. Vermeer Mfg., Co.*,
    298 F.3d 1290 (Fed Cir 2002) ..............................................................25

*Pronova Biopharma Norge AS v. Teva Pharms. USA, Inc.*,
    549 F. App'x 934 (Fed. Cir. 2013) ......................................................14

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000) ..............................................................................4

*Sulzer Textil A.G. v. Picanol N.V.*,
    358 F.3d 1356 (Fed. Cir. 2004) ...........................................................23

*Summit Tech., Inc. v. Nidek Co.*,
    363 F.3d 1219 (Fed. Cir. 2004) .............................................................4

*Tech. Licensing Corp. v. Videotek, Inc.*,
    545 F.3d 1316 (Fed. Cir. 2008) ...........................................................20

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    593 F.3d 1325 (Fed. Cir. 2010) ...........................................................23

*TransWeb, LLC v. 3M Innovative Props. Co.*,
    16 F. Supp.3d 385 (D.N.J.) ...................................................................17

*Wasica Fin. v. Schrader Int'l*,
    432 F. Supp. 3d 448 (D. Del. 2020) .....................................................29

*Zenith Elecs. Corp. v. PDI Commc'n Sys.*,
    522 F.3d 1348 (Fed. Cir. 2008) ................................................... 17, 25

**Statutes**

35 U.S.C. § 102(a) ........................................................................ 19, 24

35 U.S.C. § 102(b) ..................................................................... 9, 19, 24

**Other Authorities**

*CliniComp Int'l, Inc. v. Athenahealth, Inc.*,
   No. A-18-CV-00425-LY, Dkt 155 (Defendant's Brief)
   (W.D. Tex. Oct. 2, 2020).......................................................................................31

**Rules**

Fed. R. Civ. P. 50(a).................................................................................................20

Fed. R. Evid. 301,
   Notes of Conference Committee, House Report No. 93-1597............................28

# I. SUBSTANTIAL EVIDENCE DOES NOT SUPPORT THE VERDICT

Ingenico's invalidity theory at trial relied on a ***separately downloadable*** Firmware Upgrader, the *only* upgrade feature for which evidence was presented. Because the Firmware Upgrader was never "on sale" or "in public use," the district court and Ingenico shifted post-trial to DiskOnKey devices supposedly sold with a "pre-installed" upgrader. ***This alternative theory was not presented to the jury*** and did not even surface in this case until post-trial briefing. Br. at 16-19. Nor was any evidence presented at trial about the "DiskOnKey System" that Ingenico conjures for the first time on appeal. Resp. at 15. This case was never about a prior art 'system,' and even Ingenico avoids describing key evidence as supporting its new "DiskOnKey System." *See, e.g.*, Resp. at 7 ("spreadsheets…demonstrate sales of ***DiskOnKey devices***….").[1]

Public availability of DiskOnKey ***devices*** is not clear and convincing evidence that any Firmware Upgrader was sold or used, particularly when it was uniformly presented as separately downloadable and, as Ingenico does not dispute, is a tangential application unnecessary to normal DiskOnKey operation. This renders ***un***reasonable any inference of use based on mere availability.

---

[1] All emphases added unless otherwise noted.

**A.  THE DISTRICT COURT ERRED BY RESTING THE VERDICT ON A NEW POST-TRIAL THEORY**

Ingenico's Response does not identify anything in the record showing its "pre-installed" upgrader theory.  There is nothing in the trial transcript, nothing in the pretrial disclosures, and nothing even earlier, such as in invalidity contentions or expert disclosures.  Fundamentally, this "pre-installed" theory was never properly noticed.  Instead, Ingenico and the district court rest on three words in a single document—"already comes with"—which were never discussed at trial and are about DiskOnKey *Technology* writ-large, not DiskOnKey *devices sold at retail*.  *See* Br. at 17-21.

Nothing indicates the jury even saw the "already comes with" language.  Ingenico asserts without support that the "entire" exhibit was presented.  Resp. at 19.  But the testimony was summary, brief, and focused entirely on *other* parts of the exhibit, namely the web archive information and one paragraph "next to the kangaroo"—not the one containing the "already comes with" language.  Appx9778-9779, 782:3-783:21 (discussing Appx10931).  The transcript reflects that those were the only portions enlarged for the witness (and jury) to read.  *See id.*  Further, the jury did not receive exhibits by default during deliberations and did not ask to see this one.  *See* Appx10459, 1380:11-18; Appx10466, 1387:10-15.  Ingenico also ignores that immediately after the close of Ingenico's case, the court questioned whether "the ability to download" is sufficient, confirming that the presentation of

evidence conveyed a downloadable Firmware Upgrader—not a pre-installed one. *See* Br. at 18.

Even assuming the jury saw the "already comes with" language, the "pre-installed" theory is not explicit anywhere and requires tenuous and unsupported inferences. Indeed, the district court rewrote the document to support its conclusions. Br. at 19-21. The document simply does not say that an upgrader came pre-installed on DiskOnKey devices (nor does any evidence). *See id.*; Appx10931. Even Ingenico refers to its "pre-installed" theory euphemistically as an "interpretation." Resp. at 18, 20.

Ultimately, a "pre-installed" upgrader is a crucially different § 102 theory from that presented at trial. IOENGINE had no opportunity to defend against this "pre-installed" theory and it would be patently unfair to sustain the verdict on that basis. Ingenico wrongly contends that this argument is "without *any* authority…." Resp. at 19 (emphasis original). But IOENGINE cited cases from this Court, the Third Circuit, and the district below, all recognizing the error in Ingenico's approach. Br. at 18-19 (citing, *e.g.*, *Allergan, Inc. v. Barr Lab'ys, Inc.*, 808 F. Supp. 2d 715, 735 (D. Del. 2011) ("[D]efendants did not allow Allergan to mount a defense at trial to [the newly raised] theories…."), *aff'd*, 501 F. App'x 965 (Fed. Cir. 2013)). One court even rejected the notion that merely because language appears in trial exhibits it constitutes substantial evidence. In *L-3 Commc'ns Corp. v. Sony Corp.*,

No. 10-cv-734-RGA, 2014 WL 4674815 (D. Del. Sept. 12, 2014), post-trial arguments in support of the verdict cited "portions of the transcript **as well as figures taken from the prior art**." *Id.* at *5. The court refused to address the figures, even though they appeared in trial exhibits, explaining that a verdict cannot "be sustained based on arguments and evidence that were never presented to the jury" because that "could 'deprive one's opponent of any meaningful opportunity to respond.'" *Id.* at *2, *5 n.10.

Ingenico argues that all evidence must be considered. Resp. at 19-20. But none of Ingenico's cases hold that the jury can be assumed to have considered unstated **theories**. Further, Ingenico's cases reflect that evidence must have been meaningfully presented, not that a verdict can stand on a new interpretation of three isolated words in an exhibit. *See Summit Tech., Inc. v. Nidek Co.*, 363 F.3d 1219, 1223-30 (Fed. Cir. 2004) (reviewing evidence and testimony "***presented*** at trial"); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143-53 (2000) (analyzing issues through evidence and testimony presented at trial); *i4i Ltd. v. Microsoft Corp.*, 598 F.3d 831, 850-52 (Fed. Cir. 2010) (discussing evidence and testimony presented for both alternative theories).

## B. THE FIRMWARE UPGRADER WAS NOT "ON SALE"

### 1. Substantial Evidence Does Not Support a "Pre-Installed" Upgrader

Nearly a dozen instances across Ingenico's trial presentation—including the key "Readme" document—describe the Firmware Upgrader as separately available for download. Br. at 13-14. Ingenico's (and the district court's) only counterexample unreasonably relies on an isolated, counterfactual interpretation of "already comes with." This is not substantial evidence.

Ingenico criticizes IOENGINE for relying on "abbreviated excerpts" and a "tortured and out-of-context" reading of the "already comes with" webpage—but no explanation accompanies Ingenico's rhetoric. Resp. at 20-21. In reality, IOENGINE reads the webpage *in* context, as addressing "DiskOnKey Technology," and consistent with *all* other evidence reflecting a separately downloadable Firmware Upgrader. By contrast, Ingenico relies on a single clause the district court misquoted. The webpage is titled "DiskOnKey Technology" and says "*DiskOnKey* already comes with" not "*[t]he* DiskOnKey already comes with." *Compare* Appx10931 *with* Appx7. The latter rewrite—never even argued by Ingenico below—was to suggest the sentence refers to what "comes with" DiskOnKey devices sold at retail; the actual sentence indicates only availability, at most, as part of the broader technology platform.

Instead of addressing IOENGINE's arguments, Ingenico accuses IOENGINE of ignoring the DiskOnKey's "capabilities" and repeatedly references its capability to run applications. *E.g.*, Resp. at 7-9, 19, 22-24, 35-36. But the capability to run applications *generally* is not clear and convincing evidence that a *specific* application meeting the claim limitations was sold pre-installed on DiskOnKey devices. Nor can one infer from "capabilities" that the claimed invention was on sale, particularly with respect to the method claims. Even a hypothetical DiskOnKey with a pre-installed upgrader does not embody the claimed process, both because the upgrader is tangential and unnecessary to normal DiskOnKey operation and, as discussed below, because there is no evidence that any pre-installed upgrader satisfies the claim limitations. *See infra* at I.B.2.

Ingenico next argues that IOENGINE has no "evidentiary support" that DiskOnKey devices were "blank" (*i.e.*, without pre-installed applications or data), but strangely re-cites IOENGINE's supporting evidence (including testimony from three of Ingenico's witnesses) while citing nothing contrary. *See* Resp. at 22-23. Although some of the evidence addressed downstream DiskOnKey sales (*e.g.*, sales by Fuji, an M-Systems customer), Ingenico nonetheless chose not to present any testimony about pre-installed applications while simultaneously proffering multiple witnesses who described DiskOnKeys as "blank." The evidence of blank DiskOnKeys, even construed narrowly as Ingenico proposes, is uncontradicted.

## 2. No Evidence Shows That Any Pre-Installed Upgrader Invalidates

Even if some upgrade feature was pre-installed, no evidence shows how *that* upgrader worked. Ingenico claims there is no proof of two "substantively different" upgraders. Resp. at 23-24. But that inverts the clear and convincing burden. It is also incorrect. The Firmware Upgrader Mr. Geier analyzed and testified about was "download[ed]…from http://www.diskonkey.com/ and *save[d]…to your hard disk*." Br. at 21-22 (citing Appx11177); *see also* Appx9794-9795, 798:22-799:15; Appx11171. If the host computer—which Ingenico mapped to the claimed terminal, *see* Appx9825-9826, 829:25-830:10—had "an active connection to the Internet," one could "[r]un the application" from the computer by "[d]ouble click[ing] the…application icon." *See* Appx11177; Appx9795-9796, 799:16-800:7 ("You download it to the desktop…. You are ready to start using it."). By contrast, the "already comes with" webpage describes that the DiskOnKey "processor runs applications straight from the [DiskOnKey] – not from the host computer." Appx10931.[2] This is "substantively different." Notably, each of the invalidated claims require program code stored on the *terminal* memory and executed by the *terminal processor*. Br. at 22. Ingenico cannot explain how an application run

---

[2] Nothing was running from the DiskOnKey during the attempted trial demonstration as no DiskOnKey was plugged in. *See* Appx9822-9883, 826:6-827:2.

"straight from the [DiskOnKey] – ***not from the host computer***" satisfies limitations requiring program code stored on and run by the ***terminal processor***. Similarly, no trial evidence explained that an upgrader run "straight from the [DiskOnKey]" would be configured to use an interactive user interface on the host computer or operate in response to user interaction as claimed. Br. at 22.

Further, Ingenico's witness testified about updating DiskOnKey firmware "even before there was an application." Br. at 21-22. Ingenico contends that this is not evidence of different upgraders "once there was an application," Resp. at 24, but cannot dispute that different upgraders existed. Instead, it speculates (without support) that M-Systems discontinued one. *Leader Techs., Inc. v. Facebook, Inc.*, 678 F.3d 1300 (Fed. Cir. 2012), cited by Ingenico, is not analogous. There, admissions and documentary evidence established pre-critical date software sales and no "contemporaneous evidence" showed any substantively different software versions. *Id.* at 1306-07. It was the co-inventor's "transparently convenient" contrary assertion that the jury was entitled to disbelieve. *Id.* at 1307. Here, there are substantive and material differences in Ingenico's disparate evidence. Further, IOENGINE is relying on Ingenico's evidence and testimony, not inventor testimony.

### 3. The Separately Downloadable Firmware Upgrader Was Not "On Sale"

Ingenico does not argue that the separately downloadable Firmware Upgrader was "on sale." Ingenico also concedes IOENGINE's fundamental point that the

SDK is not evidence that the Firmware Upgrader qualifies as prior art under any § 102 theory, instead reiterating its mistaken "capabilities" argument. *See* Resp. at 21, 30; *supra* I.B.1. Regardless, Ingenico does not explain how the Firmware Upgrader could have been based on SDK features not yet existing. Br. at 31.

## C. THE FIRMWARE UPGRADER WAS NOT "IN PUBLIC USE"

Ingenico does not dispute several key facts: (i) the Firmware Upgrader is a tangential and optional accessory unnecessary for normal DiskOnKey operation; (ii) the only reason to use it is if updated firmware is made available; and (iii) there is no evidence that any firmware update was released for use with the Firmware Upgrader. Br. at 33-34. Ingenico is not entitled to an inference that the Firmware Upgrader was actually used.

### a. *There Is No Substantial Evidence of Public Use*

There can be no dispute that what must be in public use is "***the invention***." 35 U.S.C. § 102(b). As the district court recognized, the claims "recite a portable device with a processor that performs functions in response to inputs on an interface located on a separate device—the terminal—which in turn is connected to a network." Appx68; *see* Appx164-168 (claims require specific code, stored in particular memories and executed by particular devices); Appx202-203 (same). Thus, the invention is not merely a portable device (like a DiskOnKey) or a terminal (like a host computer). Nor is it merely executable program code (like the Firmware

Upgrader). And everything must be in communication with a network (like a M-Systems' server).

The facts here are distinctly analogous to *Minn. Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294 (Fed. Cir. 2003) (hereinafter "*3M*"). Br. at 32-33. Just as there was no evidence in *3M* that Ricoseal was mixed together or applied to a device, mere availability of the Firmware Upgrader (executable code) is ***not*** evidence that it was ever used in combination with a portable device (DiskOnKey), terminal (host computer), and communications network node (M-Systems server) as claimed. *See id.* Thus, the district court and Ingenico are wrong that there would be public use "if even a single person downloaded the [Firmware Upgrader]," Resp. at 37, because executable code alone is not the invention. Regardless, there is no evidence anyone downloaded it or even of a firmware upgrade release that might have prompted a download.

Another analogous case is *IBM Corp. v. Priceline Grp. Inc.*, 271 F. Supp. 3d 667 (D. Del. 2017), *aff'd sub nom. IBM Corp. v. Booking Holdings Inc.*, 775 F. App'x 674 (Fed. Cir. 2019). Ingenico argues incorrectly that *3M* and *IBM* "lacked evidence of how the allegedly invalidating products were actually configured." Resp. at 34-35. But the problem was not insufficient evidence of ***how*** the prior art was configured; rather, no evidence showed that anyone ***actually*** configured it as claimed. Specifically, in *3M*, there was evidence that Ricoseal was

a "cable encapsulant" and 3M's employee "testified that he understood that Ricoseal was a two-part compound, of which 3M received a sample with descriptive product literature." 303 F.3d at 1308, 1309-1310. That was still insufficient to prove actual use. And in *IBM*, the HyperCard system was "a combination of several components," including software run on a host computer connected to a network. 271 F.Supp.3d at 679. But, like here, no pre-critical-date evidence showed that those components were configured as claimed. *See id.* at 679-81.

Ingenico again improperly relies on sales of DiskOnKeys with allegedly pre-installed upgrade software. Resp. at 27; *see supra* I.A-I.B. And it is unreasonable to infer that DiskOnKey sales prove that a separately downloadable and tangential application unnecessary to normal DiskOnKey operation was ever used. Ingenico also contends that the Firmware Upgrader and the "DiskOnKey System" were "disclosed" and "provided" to the public. *See* Resp. at 27, 32-33, 35. But Ingenico's evidence at best shows mere availability. For example, Ingenico admits that the Firmware Upgrader webpage shows only "availab[ility] for download," Resp. at 28, and relies on an ***internal*** e-mail (*see* Resp. at 27 (citing Appx11174-11176)), with no evidence that any member of the public received it. Ingenico argues that distribution was encouraged, Resp. at 33, but a case Ingenico cited below explains why that is insufficient. In *Intel Corp. v. U.S. Intern. Trade Comm'n*, 946 F.2d 821 (Fed. Cir. 1991), even though salesmen "were expected to distribute…samples to

their customers" for commercial advantage, that was not enough, because even if actual distribution "may have been 'likely,'" it requires "extensive inference drawing" and is not clear and convincing evidence. *Id.* at 830. Further, what Ingenico calls a "press release" is just M-Systems' archived webpage. *See* Resp. at 27-28 (citing Appx11041-11042). There is no evidence of distribution or receipt of the Firmware Upgrader by the public. Ingenico also points to Mr. Geier's testimony about what people "would think they need," Resp. at 28, ignoring that it is improper and unsupported speculation that does not establish actual use. Br. at 36.

Ingenico's cases are inapposite. IOENGINE addressed *Elec. Storage Battery Co. v. Shimadzu*, 307 U.S. 5 (1939) in opening. Br. at 57-58. In *ART+Com Innovational Pool GmbH v. Google LLC*, the prior art was demonstrated to large audiences and the patentee received and discussed the prior art source code. 712 F. App'x 976, 979-80 (Fed. Cir. 2017). In *Baxter Int'l, Inc. v. COBE Labs., Inc.*, public use was not found merely because "observers included co-workers under no restrictions" as Ingenico suggests; instead, the prior user's laboratory was in a public building and visitors "observed the [prior art] in operation." 88 F.3d 1054, 1058-59 (Fed. Cir. 1996). In *Eolas Techs Inc. v. Microsoft Corp.*, a third party actually demonstrated the prior art to Sun engineers under no confidentiality obligation and they expressed their intent to share the information. 399 F.3d 1325, 1334-35 (Fed. Cir. 2005).

Ingenico argues it should benefit from "reasonable inferences," particularly given the passage of time. Resp. at 33-34. But, as discussed, Ingenico's inferences are **un**reasonable. Although it deposed a M-Systems employee, it elected not to ask the questions for which it now seeks inferences. Br. at 37. Further, tenuous inferences cannot refute contrary evidence. Resp. at 36-37. For example, an internal M-Systems presentation referring to the Firmware Upgrader, relied upon by Ingenico and dated just two days before the § 102(b) critical date, stated ***"[w]e hope there will never be a need to use it***." Appx11286-11287. Ingenico argues that the statement is "out-of-context" and relates only to "fix[ing] a 'critical bug,'" Resp. at 36-37, but that is not what the document says. Instead, on the last slide ("When is DOK Upgrade Used?")—distinct from Ingenico's cite to a prior page—the document offers an unqualified statement that only makes sense if the Firmware Upgrader had never been used.

Finally, Ingenico repeatedly argues that its prior art meets the limitations of the asserted claims. *See, e.g.*, Resp. at 30, 35. But this is irrelevant to IOENGINE's appeal, which challenges whether the prior art qualifies under § 102.

### b. *The District Court and Ingenico Applied Incorrect Public Use Principles*

#### (1) *Inventor Use Is Different than Third Party Use*

Ingenico and the district court misunderstand the difference between inventor-use and third-party-use. They mistake "third-party-use" as use by anyone other than

the inventor, such that *Egbert v. Lippman*, 104 U.S. 333 (1881), became a third-party-use case when the inventor gave the corset to his girlfriend. But the question is whether the inventor and third party are "**unaffiliated**." *See, e.g.*, *Dey, L.P. v. Sunovion Pharms., Inc.*, 715 F.3d 1351 (Fed. Cir. 2013); *see also* Br. at 56 (courts recognize *Egbert* as an inventor-use case). Ignoring this distinction, Ingenico repeatedly relies on inventor-use cases, starting with *Pronova Biopharma Norge AS v. Teva Pharms. USA, Inc.*, 549 F. App'x 934 (Fed. Cir. 2013). *See* Resp. at 25. However, in addressing *Egbert*, *Pronova* explains that "[t]he inquiry is not whether the third person to whom an invention is disclosed makes an open and obvious use of it, but whether **the inventor himself** has made a use of his invention which is 'public' because it was given to a member of the public without restriction." 549 F. App'x at 940. Ingenico makes no suggestion that **Mr. McNulty** gave his invention to anyone and, therefore, under inventor-centric rules, he has not "made a use of his invention which is 'public.'" *See id*.

Ingenico nevertheless argues that "[a]n invention is in public use if it is shown to or used by an individual other than the inventor under no limitation, restriction, or obligation of confidentiality." Resp. at 26 (quoting *Am. Seating Co. v. USSC Grp.*, 514 F.3d 1262, 1267 (Fed. Cir. 2008)). But *Am. Seating* is an inventor-use

case and, even then, distinguishes between mere availability to the general public versus an invention being actually "shown to or used by" a specific individual.[3]

*In re Smith*, 714 F.2d 1127, 1134 (Fed. Cir. 1983), cited by *Am. Seating*, states Ingenico's and the district court's principle in another form: public use includes "*any use* of [the claimed] invention *by a person other than the inventor* who is under no limitation, restriction or obligation of secrecy to the inventor." Appx35-36 (emphasis by district court); Resp. at 53-54. Crucially, **this Court has expressly rejected applying precisely that language to third-party use**. In *Dey*, this Court reversed the district court on this issue, explaining that, "those statements are not meant to apply to third-party use cases" because otherwise, "any unaffiliated third-party use, no matter how secret, would necessarily invalidate a patent because such uses are, by definition, made by persons not owing a duty of secrecy 'to the inventor.'" 715 F.3d at 1358-59. Ingenico cites factors from *Dey* regarding third-party use, Resp. at 26, but there is no suggestion that any are dispositive. *Dey*, 715 F.3d at 1355; *see* Br. at 58-59. Ultimately, the district court and Ingenico are simply wrong that "*any use*" by an unaffiliated third-party with no duty of confidentiality to the patentee is invalidating.

---

[3] Despite prototype demonstrations, there was no public use in *Am. Seating*, in part because there was "no evidence that an unrestricted number of people unconnected with the development of the invention observed the invention in use." *See* 514 F.3d at 1267-68.

## (2) *Mere Accessibility Is Insufficient*

Ingenico cites *Minerva Surgical, Inc. v. Hologic, Inc.*, 59 F.4th 1371, 1377 (Fed. Cir. 2023) to argue that "the proper test for…'public use' is whether 'the ***invention*** was accessible…." Resp. at 25 (emphasis original), 37.  But in *Minerva*— an inventor-use case—there was no question that there was actual, public "use."  The inventor demonstrated the invention at a booth and in meetings at a preeminent industry event.  *See* 59 F.4th at 1373, 1378.  The only question in *Minerva* was whether the undoubtedly public use of the invention made the invention itself accessible.  That is the context for the above quote.  Indeed, *Minerva* cites *Delano Farms Co. v. California Table Grape Comm'n*, 778 F.3d 1243, 1247 (Fed. Cir. 2015), which correctly holds that the question is whether the "purported ***use***," not just the "invention," was accessible.  *Id*.  And *Delano* cites *Invitrogen Corp. v. Biocrest Mfg.*, 424 F.3d 1374, 1380 (Fed. Cir. 2005), which the district court misquoted on this same issue below.  *See* Br. at 38-39.  As this Court has explicitly recognized, "*Invitrogen* did not concern third-party public use ***at all***."  *BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 968 (Fed. Cir. 2020).

Ultimately, the district court erred by refusing to follow the rule that "public use requires 'actual use by someone at some point.'"  *See* Br. at 38-39 (citing Appx14, n.6).  Even *Egbert* is in accord: "If an inventor…gives or sells [his device] to another, to be used…without limitation or restriction, or injunction of secrecy,

16

*and it is so used*, such use is public….” 104 U.S. at 336. Notably, Egbert’s corset was not simply accessible; *his girlfriend used it*. *Id.* at 335-36. No cases indicate that mere accessibility or availability, without actual use, is sufficient.

Ingenico also continues to misstate the role of circumstantial evidence, arguing that “circumstantial evidence of public accessibility…[is] appropriate evidence of public use.” Resp. at 28-29. But Ingenico’s citation of *TransWeb* merely says that “direct or circumstantial evidence *corroborating* public use *may* be sufficient….” *Id.*; *TransWeb, LLC v. 3M Innovative Props. Co.*, 16 F. Supp.3d 385, 393 (D.N.J.). As explained in opening, Ingenico’s cases involve compelling evidence of *actual* use, often in the form of witness testimony and extensive corroborating evidence. *See* Br. at 41-43. Ingenico mischaracterizes *Zenith Elecs. Corp. v. PDI Commc’n Sys.,* 522 F.3d 1348, 1358 (Fed. Cir. 2008) as turning on mere “availab[ility] for use.” Resp. at 29. Instead, *Zenith* involved testimony from a percipient witness, corroborated by other evidence, that the invalidating combination “was on sale *and being publicly used*…well before the…critical date”; the reference to “available for use” referred to a precursor product. 522 F.3d at 1357-58.

Ingenico argues no requirement exists “to provide direct evidence that someone physically used the Firmware Upgrader,” citing *Minerva*. Resp. at 31. First, *Minerva* is an inventor-use case: Ingenico’s quoted language even says

17

"where…the *inventor* used the device…." *See id.*; *see also Minerva*, 59 F.4th at 1373. Second, the invention in *Minerva* was a standalone surgical device, demonstrated integrally. 59 F.4th at 1373. Here, the claimed configuration of a portable device, terminal, communications network node, and specific executable program codes bears no resemblance to *Minerva*. Third, *Minerva* turned on disclosures and demonstrations by the inventor to interested members of the public, not indiscriminate "availability." *See id.* at 1376-80. Minerva "demonstrate[d]" its device at the industry's "Super Bowl" and one Minerva employee reported that the "[b]ooth has been busy. Lots of interested [doctors]…. ***Devices have been working well.***" *See id.* at 1376. It was in this context—where "sophisticated industry members…were allowed to scrutinize the [invention] closely and see how it operated"—that whether someone else "physically handled" the device did not matter. *Id.* at 1379.

## D.    THERE IS NO EVIDENCE OF THE "COMMUNICATIONS NETWORK NODE" IN THE U.S.

IOENGINE's appeal on this issue relates to system claims 105 and 124 of the '703 Patent. For those system claims, the location of M-Systems' servers bears on whether "the *invention*" was in public use, on sale, or known or used by others "in this country." Ingenico points to sales of DiskOnKey devices, webpages, and a download link for the Firmware Upgrader. Resp. at 31. But Ingenico mapped none of those to the claimed "communications network node." Instead, Ingenico pointed

to the server supposedly containing firmware upgrades. Appx9828, 832:1-7 ("That is a server that contains and stores...the firmware upgrades."). No evidence shows *that server* in public use, on sale, or known or used by others in the U.S., which means Ingenico cannot satisfy the "in this country" requirement for any of the system claims. Ingenico cites *Finjan, Inc. v. Symantec Corp.*, No. 10-cv-593, 2013 WL 5302560 (D. Del. Sept. 19, 2013), but, in *Finjan*, there was a "U.S. support site" that issued regular beta releases. *Id.* at *7. This is independent grounds for reversal on these claims.

### E. THE FIRMWARE UPGRADER IS NOT § 102(A) ART

#### a. *The Firmware Upgrader Was Not "Known or Used by Others"*

Regarding "used by others," Ingenico relies on its § 102(b) analysis. As discussed above, there was no "actual use" of the Firmware Upgrader, which § 102(a) likewise requires. *Supra* I.C. Ingenico does not address *Ex Parte Bokhari*, holding allegedly invalidating software *available* for download (like the Firmware Upgrader) is insufficient to prove that it "*was* downloaded, or otherwise 'known or used by others....'" No. 09/902,929, 2010 WL 4740064, at *3 (B.P.A.I. Nov. 19, 2020).

Regarding "known by others," Ingenico argues that the totality of DiskOnKey evidence enabled a POSITA to practice the invention. Resp. at 38. But that knowledge must have been "accessible to the public," *BASF*, 955 F.3d at 964, and

Ingenico relied on numerous confidential documents for which there was no evidence of public accessibility.  *See* Br. at 45-46; *infra* II.B.

b.     ***The Firmware Upgrader Postdates the Invention***

The district court and Ingenico err in their invention date analysis.  Ingenico incorrectly argues that "[i]f IOENGINE meets its burden of production, only then does the burden of persuasion shift to Ingenico…."  Resp. at 39 (citing *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316 (Fed. Cir. 2008)).  But *Tech. Licensing* is clear that the burden of persuasion "***never*** shifts."  *Id.* at 1327, 1329.  IOENGINE ***never*** has the burden of persuasion relating to invalidity, including regarding its own conception and diligence.  Br. at 47-48.  Ingenico further characterizes IOENGINE's evidence as an attempt to "swear behind" prior art, Resp. at 11, a prosecution concept that pays no respect to the presumption of validity.

Crucially, Ingenico ignores that by not renewing its Rule 50(a) motions, it cannot challenge whether IOENGINE satisfied its burden of production.  Br. at 48.  Ingenico argues there was no explicit ruling on the burden of production, Resp. at 40, but the case went to the jury on the premise that the burden was satisfied, subject to Ingenico renewing its Rule 50(a) motion, which it did not do.  Br. at 47-48.  IOENGINE is not arguing that its invention date "*must*" be accepted.  Resp. at 39 (emphasis original).  Instead, the question is whether ***Ingenico disproved*** the earlier invention date by clear and convincing evidence.  Ingenico now makes numerous

arguments never presented to the jury, implying that the jury could have found IOENGINE's evidence unconvincing absent substantial evidence to the contrary. This reflects a fundamental misunderstanding of the applicable burdens and law. *See Leader*, 678 F.3d at 1307 ("'Normally,' a witness's 'discredited testimony is not considered a sufficient basis for drawing a contrary conclusion.'") (*citing Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984)).

At trial, Ingenico's challenge to conception addressed only two claim elements in one from among many pieces of ***corroborating*** evidence. Ingenico does not respond to IOENGINE's analysis of the evidence on those elements. Br. at 49-51. But even if Ingenico were correct about those two elements, a narrow attack on ***corroboration*** of certain claim elements cannot overcome the rule of reason, which does not require corroboration of every element. *Id*. at 48-49. The only other testimony Ingenico points to is from Mr. Harkabi, erroneously claiming it is about conception, Resp. at 44, when it was actually about "Mr. McNulty's direction and vision" in his business, like teaming up with Pepsi. Appx9705-9706, 709:12-710:7. Further, Ingenico does not dispute Mr. McNulty's numerous prototypes and that Mr. McNulty reduced his invention to practice with his application, so Ingenico's claim that Mr. McNulty's conception was not "realistic" (Resp. at 44) is a red herring. Ingenico asserts that Mr. McNulty's testimony was only about commercialization, Resp. at 46, ignoring that his testimony was tied to specification figures and

embodiments, addressed prototype development efforts, and was corroborated by design documents and resulting prototypes. Br. at 10-11; *e.g.*, Appx16553 at 26-31.

Ingenico also claims that Mr. McNulty's conception memo cannot be corroborating because it is not "independent evidence." *See* Resp. at 43 n.3. But Ingenico's case discusses corroboration of an inventor's ***testimonial*** evidence; it separately clarifies that physical evidence requires no separate corroboration. *See Brown v. Barbacid*, 276 F.3d 1327, 1335-37 (Fed. Cir. 2002) (discussing inventor lab notebook pages). Regardless, IOENGINE presented independent testimony on conception. Br. at 8-9.

Finally, Ingenico raised no challenge to diligence at trial. Now, its arguments point almost exclusively to IOENGINE's evidence and testimony, again improperly implying that the jury could have found against IOENGINE without any substantial evidence to the contrary. Ingenico argues that Mr. Harkabi's work was for Fuji (Mr. McNulty's former employer), Resp. at 46-47, but Mr. Harkabi was clear about the distinction. Appx9701, 705:4-8. He also recalled being paid large sums for his work with Mr. McNulty, as corroborated by surviving invoices and documents. Br. at 10-11.

## II.    THE DISTRICT COURT ERRED IN ITS JURY INSTRUCTIONS

IOENGINE is entitled to a new trial where the jury instructions were "prejudicially erroneous," meaning errors could have changed the result. *See Sulzer*

*Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1364 (Fed. Cir. 2004). IOENGINE seeks

JMOL or alternatively a new trial on each of Ingenico's alternative § 102 theories.

If each theory is deficient under ***either*** the JMOL or new trial analysis, the verdict

must be overturned.

### A.    THE DISTRICT COURT'S INSTRUCTIONS ON INVENTION DATE INCORRECTLY FLIPPED THE LEGAL BURDENS

The notion that a patentee has no burden to convince the jury of its own

conception and diligence is strange. Even Ingenico and the district court struggle

with giving proper effect to this rule. This is precisely why general instructions

about Ingenico's burden to prove invalidity by clear and convincing evidence were

insufficient. They did not make clear that Ingenico must also ***disprove*** IOENGINE's

conception and diligence by the same standard. Without specific instructions, a jury

would not understand that "***disproving*** conception and diligence" was necessary.

Curiously, Ingenico focuses on a large excerpt of the instructions ***but omits***

***the complained of phrase:*** "Whatever the date of invention…," Resp. at 49, which

left ambiguous the predicate burden for proving the date of invention. Br. at 52-53.

Ingenico argues that IOENGINE "used nearly identical language" in closing to the

instruction it "now claims warrants reversible error." Resp. at 51-52. But

IOENGINE does not argue the instruction was incorrect in the abstract; instead, it

was incomplete. Conveniently, Ingenico cites *Therasense, Inc. v. Becton, Dickinson*

*& Co.*, 593 F.3d 1325 (Fed. Cir. 2010), which supports IOENGINE. There, an

instruction about whether prior art must expressly lay out elements was incorrect in totality because the court did not ***also*** instruct on the concept of inherency. *Id*. at 1332.

Ingenico also argues that IOENGINE's closing cured any error, but none of its cases hold that an attorney's correctly stated argument can cure a court's erroneous instruction. Resp. at 50-51; *see* Br. at 54.

Ingenico's only argument on prejudice is that the verdict could have rested on § 102(b) alone. Resp. at 52. But, like a shell game, Ingenico also argues that § 102(b) errors were harmless because the verdict could have rested on § 102(a). Resp. at 56. If IOENGINE is entitled to JMOL or a new trial on § 102(b), then this error was prejudicial. And if IOENGINE is entitled to JMOL or a new trial on § 102(a), then the § 102(b) errors below were prejudicial.

## B. THE DISTRICT COURT'S "PUBLIC USE" INSTRUCTIONS WERE ERRONEOUSLY PREJUDICIAL

Ingenico ignores much of the case law and underlying policies addressed by IOENGINE. This starts with the fundamental misunderstanding of *Egbert* as a third-party use case, Resp. at 53-54, despite clear contrary authority. *Supra* I.C.b; Br. at 54-56.

Ultimately, unaffiliated third-party use must place the "claimed features of the patents…in the public's possession" which requires that the public can "readily discern" the claimed features. *Dey*, 715 F.3d at 1359; Br. at 55. Similar to the

specifically recited internal configuration of devices and executable code here, the issue in *Dey* was whether the specific formulation of a drug—of which "thousands of vials" were distributed without confidentiality agreements—was nevertheless insufficiently public. 715 F.3d at 1354. *Dey* made clear that discernibility was important regardless of express confidentiality or secrecy, consistent with other cases. *See* Br. at 56-59. Indeed, as *Dey* explains, even without express confidentiality, one must consider the extent of the disclosure and the skill and knowledge of the recipients. *Dey*, 715 F.3d at 1355-56.

In response, Ingenico mistreats several cases. Resp. at 54-56. It cites a principle from *Zenith*, 522 F.3d at 1356, dealing with the on-sale bar, not public use (Br. at 39-40), without explaining how it is analogous. *New Railhead Mfg., L.L.C. v. Vermeer Mfg., Co.*, 298 F.3d 1290 (Fed Cir 2002), concerns the experimental use exception, which applies only to inventors. *See, e.g.*, *Baxter*, 88 F.3d at 1060-61. In *Lockwood v. Am. Airlines, Inc.*, the non-public inner workings related to **unclaimed** features. 107 F.3d 1565, 1570 (Fed. Cir. 1997). In *ART+Com*, the court did not address the distinction between inventor-use and third party-use cases, instead finding discernibility because "every detail was disclosed by the provision of the source code" to patentee. *ART+Com Innovationpool GmbH v. Google Inc.*, 2016 WL 9954312, at *9 (D. Del. Sept. 9, 2016), *aff'd* 712 F. App'x at 980, 984 (also relying on source code).

Ingenico purports to cite the district court's analysis of *Metallizing*, but the district court was actually addressing *Gillman*. Resp. at 55 (citing Appx39-40). And *Metallizing's* discussion of *Gillman* unambiguously supports IOENGINE: "In [*Gillman*], it was not the inventor, but a third person…and there was therefore no question either of abandonment or forfeiture by the inventor. The only issue was whether a prior use which did not disclose the invention to the art was within the statute; and it is well settled that it is not." *Metallizing Eng. Co. v. Kenyon Bearing & Auto Parts Co.*, 153 F.2d 516, 519 (2d Cir. 1946). Ingenico also points to *BASF*, Resp. at 55 (citing Appx40), which also supports IOENGINE. *BASF* explains that *Metallizing* "held that an ***inventor's*** commercial exploitation of his invention before the critical date created a public-use bar—'regardless of how little the public may have learned about the invention.'" *BASF*, 955 F.3d at 967-68. However, "[a]t the same time, *Metallizing* reaffirmed the holding of [*Gillman*], that such exploitation by a ***third party*** does not create a public-use bar." *Id.* at 968. In other words, if the invention is not discernible from an unrelated ***third party's*** commercialization, the inventor is not barred.

Even if a discernibility instruction is only proper in cases involving secrecy, that did not justify failing to give one here. Br. at 59-60. Such an instruction could have changed the result. As discussed above, the invention is not the Firmware Upgrader alone. *Supra* I.C.a. The claims are directed not just to user-facing,

observable features but also to a particular, internal implementation, requiring specific program codes stored on and executed by specific devices. It is undisputed that Ingenico relied on numerous confidential and internal documents to demonstrate that the claim limitations were met. Br. at 59. Even the Readme around which Ingenico structured its invalidity case was produced "Confidential – Attorneys' Eyes Only" decades later. Appx11177. Indeed, when Mr. Geier was asked whether the Readme was public, all he could say is "I don't remember any evidence showing it was never released," entirely disregarding Ingenico's burden. Appx9911-9912, 915:23-916:8. Even if the Firmware Upgrader application were public, that does not preclude secrecy surrounding the invention's claimed features, justifying the instruction.

## C. THE "ON SALE" INSTRUCTIONS WERE ERRONEOUSLY PREJUDICIAL

Regarding the deficient "on sale" instruction, Ingenico improperly relies entirely on a pre-installed upgrader. Resp. at 56-58; *supra* I.B. For the Firmware Upgrader presented at trial, downloadable for free, an applicable "on sale" instruction was critical. Ingenico repeats the district court's point that IOENGINE's instruction introduced complicated concepts, without addressing that jury instructions are *supposed* to explain complicated concepts. Ingenico and the district court agree that no evidence proved the separate, downloadable Firmware Upgrader was "on sale." Thus, a proper instruction could have changed the result.

**D.   THE DISTRICT COURT ERRED IN FAILING TO INSTRUCT ON THE PRESUMPTION OF VALIDITY**

Ingenico ignores that *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258-59 (Fed. Cir. 2004), predates *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 110 (2011).  Resp. at 58; Br. at 62.  Ingenico distinguishes *i4i* as discussing burdens instead of presumptions, Resp. at 59, but they are inextricably intertwined.

Ingenico argues that the "presumption is one of law, not fact, and does not constitute evidence to be weighed against the challenger's evidence."  *Id.*  But this is contrary to the Federal Rules of Evidence.  *See* Fed. R. Evid. 301, Notes of Conference Committee, House Report No. 93-1597 ("[A] presumption is considered sufficient evidence of the presumed fact to be considered….").  It is also contrary to cases explaining that the presumption counterbalances evidence of invalidity.  *Cap Exp., LLC v. Zinus, Inc.*, 722 F. App'x 1004, 1007-08 (Fed. Cir. 2018) ("[B]ecause a patent carries a presumption of validity…and a challenger must prove invalidity by clear and convincing evidence, a patentee need not present any factual evidence to prevail on a motion for summary judgment of validity."); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 642-49 (2015).

Ingenico argues that non-patent cases are "irrelevant," Resp. at 58, but these cases explain that failure to include an instruction on the applicable presumption influences the jury's evaluation of evidence and rebut Ingenico's argument of potential jury confusion.  Resp. at 59; Br. at 62.

## III.   INGENICO SHOULD HAVE BEEN ESTOPPED

Ingenico argues statutory estoppel is circumvented by relying on a DiskOnKey *device* at trial.  Resp. at 61-62.  But as IOENGINE explained and Ingenico does not dispute, Ingenico did *not* rely on the physical DiskOnKey device for any limitation distinct from printed publications it could have raised during IPR.  Br. at 64-65.  Indeed, the DiskOnKey device was never run or even plugged into any computer at trial.  *Id*.

Ingenico argues that its trial evidence was not cumulative of what it could have raised during IPR, pointing vaguely to "over a dozen documents" regarding the "DiskOnKey System."  Resp. at 61.  But Ingenico's only stated basis for such trial evidence being non-cumulative is that the evidence allegedly showed that the DiskOnKey "facilitated authentication and contained a processor."  Resp. at 62.  Ingenico does not otherwise argue that IOENGINE failed to meet its burden under *Wasica Fin. v. Schrader Int'l*, 432 F. Supp. 3d 448, 454 (D. Del. 2020).  *See* Resp. at 61-63; *see also* Br. at 62-63.  But those very concepts were already available to Ingenico at IPR, *see, e.g.* Appx11116 (press release stating that "[t]he DiskOnKey firmware already contains powerful functions such as encryption and *authentication*"); Appx11306 (DiskOnKey website discussing DiskOnKey's "on-

board ARM7 32-bit ***processor***")—and the district court *estopped* such documents that Ingenico reasonably could have been expected to discover.  Br. at 63-65.[4]

Ingenico alternatively argues that absent its subpoena, it could not have found the *specific* "Readme" document, because, while supposedly previously "publicly available," it conveniently *stopped* being so for IPR.  Resp. at 63-64.  But the district court found that the subpoena documents could have been raised unless "they are not prior art publications."  Appx115; *id.* n.22.  Ingenico never argues that the "Readme" is not a publication—its JMOL arguments rely essentially on the exact opposite—making it subject to estoppel.  Ingenico points only to the fact that the copy it obtained was self-servingly designated "confidential" when produced by Western Digital, long-after its alleged public distribution.  Resp. at 63-64.  Ingenico cites to *CliniComp Int'l, Inc. v. Athenahealth, Inc.*, No. A-18-CV-00425-LY, 2020 WL 7011768, at *2 (W.D. Tex. Oct. 28, 2020) and *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 271 F. Supp. 3d 990, 1033 (E.D. Wis. 2017) for the proposition that estoppel does not apply to non-public, confidential documents.  Resp. at 63.  But the *CliniComp* documents were internal and "marked confidential in the ordinary course

---

[4] The district court estopped Ingenico several categories of DiskOnKey documents, including documents "that were identifiable via a Google search" and obtained by subpoena.  Appx115 (referencing IOENGINE's briefing at "Dkt No. 405 at 13" (Appx1812-1816), which addressed the "DiskOnKey SDK, DiskOnKey Upgrade, and Western Digital Documents").

of business," not in litigation. *CliniComp*, No. A-18-CV-00425-LY, Dkt 155 at 3, 4 (Defendant's Brief) (W.D. Tex. Oct. 2, 2020). And the *Milwaukee* documents were confidential at all times, not just when produced. *See* 271 F. Supp. 3d at 1001. Neither is analogous to the "Readme" document that Ingenico alleges was *publicly* distributed.

Finally, Ingenico argues that IOENGINE waived its estoppel argument. But estoppel is a legal issue raised by IOENGINE and resolved at summary judgment, Appx50-Appx53, Appx111-Appx118, thereby preserving it for appeal. *Dupree v. Younger*, 598 U.S. 729, 735 (2023); *ePlus, Inc. v. Lawson Software, Inc*., 700 F.3d 509, 517-18 (Fed. Cir. 2012).

Date: January 12, 2024

Respectfully submitted,

 */s/ Noah M. Leibowitz*
Noah M. Leibowitz
Gregory T. Chuebon
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797

Derek J. Brader
Michael A. Fisher
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104

Michael H. Joshi
DECHERT LLP
3000 El Camino Real
Five Palo Alto Square, Suite 650
Palo Alto, CA 94306

*Counsel for Appellant IOENGINE,
LLC*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on January 12, 2024, I electronically filed the foregoing

with the Clerk of Court for the United States Court of Appeals for the Federal Circuit

by using the CM/ECF system. I certify that all participants in the case are registered

CM/ECF users and that service will be accomplished by the CM/ECF system.

Date: January 12, 2024

  */s/ Noah M. Leibowitz*
Noah M. Leibowitz
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797

*Counsel for Appellant IOENGINE, LLC*

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the filing has been prepared using a proportionally-spaced typeface and includes 6997 words, excluding the items listed as exempted under Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), and Fed. Cir. R. 32(b)(2).

Date: January 12, 2024

_/s/ Noah M. Leibowitz_
Noah M. Leibowitz
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797

*Counsel for Appellant IOENGINE, LLC*